1 Ruben N. Sarkisian, Bar No. 109898
2 **Avazian and Avazian**
800 Wilshire Blvd, Suite 1500
3 Los Angeles, CA. 90017

4 Telephone: (818) 240-5845
Facsimile: (888) 478-2340
5

6 E-mail: Sarklaw@aol.com

7 Attorney for Plaintiff

8

9 **UNITED STATES DISTRICT COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

2008 APR 17 AM 10: 52
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

11 Arzhang Alimoradi )      Case No. **CV08-02529**DDP (JCx)
12                     )
          Plaintiff )      1. Declaratory Relief
13                     )      2. Judicial Review
14          vs.        )
                       )
15 U.S. Citizenship & Immigration )
Services, a Bureau of the Department )
16 of Homeland Security, and DOES 1 )
Through 10. )
17          Defendants )
                       )
18

19 Plaintiff alleges:

20 1.    This Court has jurisdiction of the within action pursuant to 28 USC §2201

21 (Declaratory Judgement Act) and 5 USC §§ 701 et seq (Administrative Procedure

22 Act).

23 2.    Plaintiff Arzhang Alimoradi, is an alien, a citizen of Iran, a PhD in civil

24 engineering[1], specializing in ***Earthquake Engineering***, and an applicant for

25 Lawful Permanent Resident status[2] (Adjustment of Status ), and a victim of

26 _____

27 [1]University of Memphis, Memphis, Tennessee.

28 [2]Alien Number: A99-059-412, and Defendant's receipt No. **WAC-06-007-50443**

-1-

ineffective Assistance of Counsel, as well as Defendant's failure to appreciate an exception in the law for victims of ineffective assistance of counsel. Plaintiff's application for *Adjustment of Status*[3] is based on having been recognized[4] by Defendant as a person in the technical immigrant category of "*Outstanding Professor or Researcher*", a category created by Congress to attract the best and the brightest of persons in the sciences and academics. The relevant legislation underlying such recognition is section 203 (b)(1)(B) of the Immigration and Nationality Act, 8 CFR 204.5. Sadly, notwithstanding the intent of Congress Defendant's irrational rigidity has had the following consequences:

> **A.** Denial of Lawful Permanent Resident status to Plaintiff, and;
> **B.** Deprivation of Plaintiff's services to a highly respected engineering firm[5], attempting to do pioneering work in the filed of seismic engineering, making it less competitive against other international firms and;
> **C.** Depriving the United States of the contributions of a recognized expert int the field of Earthquake Engineering.

The denial of Plaintiff's application is particularly unfortunate in that, defendant has already recognized Plaintiff's qualifications and expertise[6]. Following the

---

[3]Adjusting the alien Plaintiff's status from that of a non-immigrant to a *Lawful Permanent Resident* alien in the United States.

[4]On August 18, 2005 by the approval of an *Immigrant Petition for an Alien Worker* ,also known as *form I-140*, filed by Plaintiff's prospective employer John A. Martin & Associates, Inc.

[5]John A. Martin & Associates, Inc.

[6]In a memorandum issued to its regional directors, dated June 6, 2006, Defendant gave the following guidance regarding "Outstanding Professors and Researchers":

The "Outstanding Professors and Researchers" category was added to the first preference (EB-1) classification, and thus exempted from the labor certification process, via the 1990 Immigration and Nationality Act (IMMACT '90), Pub. L. 101-649. Congress recognized that such employees provide direct contributions to the United States and that **U.S. workers alone could not meet**

1   said recognition, i.e. the approval of the ***Immigrant Petition for an Alien Worker,***

2   ***form I-140*** submitted by Plaintiff's employer on Plaintiff's behalf, Plaintiff

3   applied for, and was denied Adjustment of Status to that of a Lawful Permanent

4   Resident. Said denial by Defendant was based on a minor technical error

5   committed by his Plaintiff's former counsel. Said error by Plaintiff's initial

6   counsel[7] resulted in the unintentional and unknowing expiration of Plaintiff's

7   employment authorization. Said expiration caused Plaintiff to engage in

8   unauthorized employment with the same employer for whom Plaintiff had -

9   heretofore- been authorized by Defendant. The error by counsel was not

10   discovered until Plaintiff received from Defendant a communication titled ***Request***

11   ***for Evidence*** **(RFE),** dated August 1, 2007, responding to Plaintiff's application

12   for Adjustment of Status filed nearly two years earlier on September 30, 2005.

13   Said communication requested from Plaintiff that he submit evidence of his

14   employment authorization from January 2, 2006 to the time of the RFE, i.e.,

15   August 1, 2007. It was only at this time that Plaintiff discovered his counsel's

16   failure to obtain extensions of Plaintiff's employment authorization. Said

17   authorization had sadly lapsed on January 2, 2006.

18

19

**legitimate employment needs**. As a result, Congress created an expedited process for obtaining
20  permanent residence for certain qualifying aliens. Such aliens include professors and researchers
holding tenured, tenure-track, or other comparable research positions. The applicable regulations
21
require an offer of employment as initial evidence in support of a first preference petition filed on
22  behalf of an outstanding professor or researcher. See 8 C.F.R. § 204.5(i)(3)(iii). The regulations
provide that the offer of employment be in the form of a letter from the petitioning employer (i.e.,
23  U.S. university or institution of higher learning or a department, division, or institute of a private
employer) stating that the employment is a tenured or tenure-track teaching position or a
24  "permanent" research position in the alien's academic field. See 8 C.F.R. § 204.5(i)(3)(iii)(A)-
25  (C). The word "permanent", in reference to a research position, is defined as: "either tenured,
tenure-track, or for an indefinite or unlimited duration, and in which the employee will ordinarily
26  have an expectation of continued employment unless there is good cause for termination."

27

28    [7]Who was the general counsel of Plaintiff's employer and not an immigration attorney.

Plaintiff, upon learning of the error of his counsel, retained new counsel[8]. The following is a chronology of events subsequent to the retention of new counsel:

> **August 28, 2007**: Plaintiffs new counsel filed a response to Defendant's RFE of August 1, 2007. The response included as attachments, a copy of a complaint by Plaintiff filed with the State Bar of California against his former counsel, as well as former counsel's affidavit, graciously acknowledging his error. Also enclosed was a letter of support from a member of Congress. New counsel cited Matter of Lozada, 19 I&N Dec. 637 (1988), in which the Board of Immigration Appeals articulated the requirements for making *ineffective assistance of counsel* claims in immigration matters.
>
> **Oct 10, 2007**: Defended responded to the arguments made by Plaintiffs new counsel by issuing a notice of *Intent to Deny.* Said communication by Defendant took little notice of the arguments made by Plaintiff's new counsel, and merely reiterated the black letter of the law, without taking into acount the exceptions created by the ineffective assistance of Plaintiff's original counsel.
>
> *November 5, 2007*: Plaintiff's new counsel, responded to Defendant's notice of Intent to Deny.
>
> **January 15, 2008**: Defendant issued its final decision, denying Plaintiff's application for Adjustment of Status.

3.      Defendant U.S. Citizenship and Immigration Services, hereinafter referred to as CIS, through its California Services Center and Administrative Appeals Office), is a bureau of the Department of Homeland Security.

4.      Plaintiff is ignorant of the true names and capacities of the Defendants named as Does 1 through 10 and will amend this Complaint to set forth their true names and capacities when associated. Plaintiff is informed and believes and thereon alleged that such Doe defendants are public officers or agencies of their parties who must or should be joined so that complete relief may be given in this action.

---

[8]Eric Avazian, Esq., of Avazian and Avazian.

-4-

**General Allegations and Procedural Background**

5.     **FIRST COUNT**

Declaratory Relief

The Defendant's denial of Plaintiff's application for ***Adjustment of Status*** was in error, in that Defendant failed to take into consideration the facts and the law articulated in Plaintiff's response to Defendant's RFE of August 1, 2007 and Intent to Deny of October 10, 2007.

Enclosed and attached in support of this complaint please find the following:

     **A.** Defendant's Request for Evidence, marked a **Exhibit "A"**.
     **B.** Plaintiff's Response to Defendant's Request for Evidence, marked as **Exhibit "B"**.
     **C.** Defendant's Notice of Intent to Deny, marked as **Exhibit "C"**.
     **D.** Plaintiff's response to Defendant's Intent to Deny, marked as **Exhibit "D"**.
     **E.** Defendant's "Decision" dated January 15, 2008, marked as **Exhibit "E"**.
     **F.** Plaintiff's Curriculum Vitae, marked as **Exhibit "F"**.
     **E.** The approval Notice issued to Plaintiff's recognizing the Plaintiff as an ***"Outstanding Professor or Researcher"*** marked as **Exhibit "G"**.

6.     Plaintiff incorporates by reference the allegation of Paragraphs 1 through 5.

7.     An actual controversy has arisen and now exists between Plaintiff and Defendants as set forth regarding Plaintiff's right to have Plaintiff's application for Adjustment of Status to that of a Lawful Permanent Resident granted.     Plaintiff contends that Defendants have committed an abuse of discretion, acted clearly erroneously and in clear error of judgement and that the decision denying Plaintiff's application was arbitrary, fanciful and unreasonable.

8.     Plaintiff is informed and believes and thereon alleges that Defendants dispute the contentions of Plaintiff set forth in Paragraph 9.

9.     Plaintiff desires a declaration of his rights. A judicial declaration of his rights are necessary and appropriate at this time.

## SECOND COUNT

10.    Plaintiff incorporates by reference the allegation of paragraphs 1 through 9.

11.    Plaintiff requests that this court review the proceedings and the actions of Defendants therein and determine the Plaintiff's application should be granted and Plaintiff be issued the status requested.

**WHEREFORE PLAINTIFF PRAYS JUDGEMENT AGAINST DEFENDANTS AND EACH OF THEM**

A.    That this Court make a declaration of right and judicial review of the Proceedings and determine and order that the application be granted and Plaintiff be issued the status requested.

B.    For his costs of suit including attorney's fees.

C.    For such other and further relief as the Court may determine.

Dated: April 17, 2008.

Respectfully submitted,

Avazian and Avazian

By: _____

Ruben N. Sarkisian

-6-

Exhibit "A"



U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521

U.S. Citizenship
and Immigration
Services

August 01, 2007

Refer to File Number: WAC0600750443

ARZHANG ALIMORADI
C/O JOHN A MARTIN & ASSOCIATES INC
1212 S FLOWER ST 4TH FL
LOS ANGELES CA 90015

Dear Sir or Madam:

RE: Form: I485
    Beneficiary:    ALIMORADI, ARZHANG

## REQUEST FOR EVIDENCE

The documentation submitted is not sufficient to warrant favorable consideration of your petition/application.

### See Attachment for Details

### Your response must be received in this office by September 12, 2007.

Your case is being held in this office pending your response. Within this period you may:

1. Submit all of the evidence requested;
2. Submit some or none of the evidence requested and ask for a decision based upon the record; or
3. Withdraw the application or petition. (It is noted that if you request that the application or petition be withdrawn, the filing fee cannot be refunded).

You must submit all of the evidence at one time. Submission of only part of the evidence requested will be considered a request for a decision based upon the record. No extension of the period allowed to submit evidence will be granted. If the evidence submitted does not establish that your case was approvable at the time it was filed, it can be denied.

If you do not respond to this request within the time allowed, your case will be considered abandoned and denied. Evidence received in this office after the due date may not be considered.

**PLACE THIS LETTER ON TOP OF YOUR RESPONSE. SUBMISSION OF EVIDENCE WITHOUT THIS LETTER WILL DELAY PROCESSING OF YOUR CASE AND MAY RESULT IN A DENIAL. PLEASE USE THE ENCLOSED ENVELOPE TO MAIL ADDITIONAL EVIDENCE REQUEST BACK TO THIS OFFICE.**

Sincerely,

F. Gerard Heinauer
Director
NSC/MJG EX480

Nebraska Service Center

# Attachment

Please submit evidence of your work authorization from January 2, 2006 to the present.

Exhibit "B"

ARTHUR AVAZIAN
A PROFESSIONAL CORPORATION
E-MAIL: aavazian@avazianlaw.com

ARMAND AVAZIAN
E-MAIL: armandavazian@avazianlaw.com

# AVAZIAN & AVAZIAN
## *Attorneys at Law*
800 WILSHIRE BOULEVARD
SUITE 1500
LOS ANGELES, CALIFORNIA 90017-2619
TELEPHONE (213) 624-1793
FACSIMILE (213) 891-2890

ERIC AVAZIAN
A PROFESSIONAL CORPORATION
E-MAIL: eavazian@avazianlaw.com

**August 28, 2007**

**Via Express Mail**

U.S. Citizenship & Immigration Service
Nebraska Service Center
P.O. Box 82521
Lincoln, NE 68501-2521

> **Beneficiary:   ALIMORADI, ARZHANG**
> **WAC0600750443**

Dear Sir/Madam:

Our office now represents Arzhang Alimoradi in the above referenced matter as per the enclosed G-28.

We are replying to your Request for Evidence dated August 1, 2007. Unfortunately, Mr. Alimoradi has just realized that he has not had employment authorization since January 2, 2006 when his optional practical training expired. The cause of this failure is the erroneous advice received from his previous attorney, Farzad Naeim.

In March 2005 Mr. Alimoradi, through his attorney Naeim, filed a petition to change his status to H-1B. A Labor Condition Application was certified by the Department of labor for the period 08/01/05 to 07/31/08 (see copy enclosed). Attorney Naeim mistakenly believed that this certification authorized employment to 07/31/08. Therefore, he did not apply for employment authorization (I-765) for Mr. Alimoradi concurrently with the I-485. Mr. Alimoradi has filed the I-765 on August 1, 2007 (see enclosed receipt).

We are requesting that the I-485 be approved despite Mr. Alimoradi's unauthorized employment based upon the following provisions of the immigration regulations and case law.

## [INA § 245 (c)]

(c) **Alien Crewmen, Aliens Continuing or Accepting Unauthorized Employment, and Aliens Admitted in transit Without Visa. A special immigrant described in section 101 (a)(27)(H), (I), (J), or (K) who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (OTHER THAN TROUGH NO FAULT OF HIS OWN OR FOR TECHNICAL REASONS) to maintain continuously a lawful status since entry into the United States.**

The above phrase "**other than through no fault of his own or for technical reasons**" is interpreted in **8CFR § 1245.1 (d)(2)** as follows:

(2) *No fault of the applicant or for technical reasons.* **The parenthetical phrase "other than though no fault of his or her own or for technical reasons" shall be limited to:**

(i) **Inaction of another individual or organization designated by regulation to act on behalf of an individual and over whose actions the individual has no control, if the inaction is acknowledged by that individual or organization.**

Enclosed is a letter of attorney Naeim acknowledging responsibility for the failure of Mr. Alimoradi in not filing the I-765 as required by regulation. Mr. Alimoradi relied completely on the advice of attorney Naeim and had no control over his actions. Attorney Naeim is the general counsel of the petitioner John A. Martin & Associates, Inc. Mr. Alimoradi was following the advice of his attorney who was also the petitioner's attorney.

# INEFFECTIVE ASSISTANCE OF COUNSEL

The landmark case of **MATTER OF LOZADA 857 F.2d 10** sets forth criteria for an alien to establish ineffective assistance of counsel. This criteria has been codified in asylum cases at **8CFR § 1208.4 (iii):** The same relief is available to the beneficiary in the instant case.

**8CFR § 1208.4 (iii) Ineffective assistance of counsel,** provides that:

> **(A)** **The alien files an affidavit setting forth in detail the agreement that was entered into with *counsel* with respect to the actions to be taken and what representations *counsel* did or did not make to the respondent in this regard;**

> **(B)** **The *counsel* whose integrity or competence is being impugned has been informed of the allegations leveled against him or her and given an opportunity to respond; and**

> **(C)** **The alien indicates whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not;**

Enclosed please find the following documents, which establish compliance with matter of *LOZADA* and **8CFR § 1208.4 (iii):**

1. Affidavit of beneficiary Arzhang Alimoradi;
2. Letter and affidavit of beneficiary to attorney Farzad Naeim and postal receipt confirming delivery;
3. Reply of attorney Naeim acknowledging his errors and his affidavit;
4. California State Bar complaint form filed by beneficiary and postal return receipt.
5. Letter of Congressman Adam B. Schiff.

Since the failure to file the employment authorization was solely based upon the mistake of attorney Naeim and his ineffective assistance and not through the fault of the beneficiary, please approve the I-485 application as soon as possible and employment authorization *nune pro tunc* to January 2, 2006.

Thank you for your cooperation and prompt attention to this matter.

Very truly yours,

ERIC AVAZIAN

EA/sd
Enclosures

August 16, 2007

RE: Personal Statement in Support of I-485 Application for Adjustment of Status of Dr. Arzhang Alimoradi

Dear Madam or Sir:

I am a senior researcher specialized in earthquake engineering. My professional life and service encompasses teaching, research, and professional engineering consultation and service in many parts of the world. In the next few pages, I would like to provide you with a statement of my qualifications, a summary of my involvement in and contributions to the academic and professional communities, and the expected impact of my work and stay in the Unites States as a U.S. researcher, should my I-485 application be deemed qualified for Adjustment of Status.

I completed my Ph.D. in Earthquake Engineering at The University of Memphis in December 18, 2004 and joined the R&D department of John A. Martin & Associates, Inc. in January 3, 2005 as a senior research engineer on Optional Practical Training (work authorization valid till January 2, 2006). John A. Martin & Associates, Inc. required me to consult their General Counsel, Dr. Farzad Naeim, to handle my immigration matters. In February 22, 2005 he filed an I-140: Immigration Petition for Alien Worker (proving outstanding professor/researcher Sec.203 (b) (1) (B)) which was subsequently approved by the USCIS in August 18, 2005. At the same time, Dr. Naeim filed an I-129: Petition for Nonimmigrant worker (H1B visa), but the application was unfortunately abandoned after USCIS requested additional evidence in support of this application. I was always told by the international students office at school that once my OPT card is expired I should be on a valid work visa. I brought the issue to the attention of my attorney numerously but each time I was told that an approved I-140, a pending I-485 and the Department of Labor's certification would suffice as proof of work authorization. I believe my application for adjustment of status is in jeopardy due to ineffective assistance of counsel. As a result, relying on the advise of my attorney has left me without work authorization.

Obviously, this situation was beyond my control. I was not informed about applying for an I-765 during the process of adjustment of status until August 1st, 2007 when I received the USCIS request for evidence of work authorization for my pending I-485. I immediately filed for an I-765.

I consulted attorney Eric Avazian on August 12, 2007 who informed me about the mistakes of my former attorney, Dr. Farzad Naeim, particularly in not filing an I-765 with an I-485 as required by the regulations. Attorney Avazian also advised me that I could file a claim against Dr. Farzad Naeim for ineffective assistance of counsel in order to rectify the situation.

As a result of this situation, I have lost my job with subsequent complications that concerns my professional and personal life. I would like to request your kind consideration of my pending I-485 application in view of the failure of attorney Naeim and my background as set forth below:

1. Education, Registration, and Experience

2. Responsibilities, Contributions, Collaborations, and Synergic Activities

3.   Awards, Achievements, and Honors

My primary work (and research interest) is towards understanding structural behavior in response to earthquake loads, hurricanes, explosions; and evaluation and prevention of structural collapse. The I-35 Interstate Bridge Collapse in Minneapolis (August 2007) and the tragic events of September 11, 2001, exemplify the importance of my line of work and its outcomes (teaching, research, and consulting) that could potentially benefit my second home-country.

## 1.   Education, Registration, and Experience:

I earned my Ph.D. in Earthquake Engineering from The University of Memphis as a Herff College of Engineering Fellow with a GPA of 4.0.  During my postgraduate studies at Memphis, I was involved with research in two major national research centers: the Mid-America Earthquake Center at the University of Illinois at Urbana-Champaign and with the Center for Earthquake Research and Information, the only research institution in the world dedicated entirely to the study of intra-plate earthquakes in New Madrid seismic zone. I hold the prestigious Certificate of Earthquake Science and Engineering from the Mid-America Earthquake Center at the University of Illinois at Urbana-Champaign through intensive course-work at Texas A&M University's Consequence-based Engineering Institute.

My registration includes the Certificate of Engineer-in-Training from the State of California in January 2006; besides, more recently I took and passed the national breath and depth exams of the Professional Engineering Registration as well as the California-specific Seismic Exam in 2007.  I will take the last and final California-specific exam of Surveying for completion of my Professional Engineering registration this October.

I am trained for Earthquake Reconnaissance.  I have been the southern California backup person for a major northern California earthquake clearinghouse procedure. A clearinghouse is the focal point of coordinating post-earthquake investigations between researchers and organizations from around the globe in the aftermath of a major earthquake.

I hold the Certificate of Design and Retrofit from Ottawa-Carleton Earthquake Engineering Research Center in Ottawa, Canada. From 2000 to 2001, I performed research on development of an intelligent health monitoring system for the Confederation Bridge, the longest bridge ever built over ice-covered seas.

With regards to effective teaching of students, I am the holder of numerous certifications of teaching from Carleton University in Canada and The University of Memphis.  I particularly enjoy working with and mentoring students in science and engineering.

## 2.   Responsibilities, Contributions, Collaborations, and Synergic Activities:

I currently hold responsibility with two major U.S. not-for-profit professional associations: I am chair of the Younger Members Committee of the Earthquake Engineering Research Institute and I also serve as Secretary and Controller of the American Society of Civil Engineers' Structural Engineering Institute's Technical Activities Division on Optimal Structural Design. In 2006, my committee proposed an international competition for earthquake engineers which I am administering this year for the first time.

I am a volunteer guest lecturer at the University of Southern California teaching Plastic Limit Analysis of Structures to senior undergraduate students. The course enables our students to design better buildings and bridges (in response to unexpected loads) and helps them understand how collapse happens, how to evaluate its potentials, and how to prevent it.

In the past, I have been responsible for seismic evaluation of large-scale projects through advanced computational analyses. Examples of such projects are hospitals, high-rise buildings, and convention centers and concert halls.

I have authored/coauthored about forty peer-reviewed journal papers, book chapters, conference papers, reports and engineering software.

The list of my collaborators in the past few years include: Earthquake Engineering Research Institute, Pacific Earthquake Engineering Research center at University of California-Berkeley, Mid-America Earthquake Center at University of Illinois at Urbana-Champaign, California Institute of Technology, Earthquake Engineering Research Laboratory, The John A. Blume Earthquake Engineering Research Center, Stanford University, Applied Technology Council, University of California, Los Angeles, California Strong Motion Instrumentation Program, Center for Earthquake Research and Information, Los Angeles Tall Building Structural Design Council, Marquette University, Clarkson University, URS Corporation, International Institute of Earthquake Engineering and Seismology, and Ottawa-Carleton Earthquake Engineering Research Center.

## 3. Awards, Achievements, and Honors:

I am the recipient of the 2006 Outstanding Journal Paper Award of the Los Angeles Tall Buildings Structural Design Council. The award was for a paper that I authored in the journal of The Structural Design of Tall and Special Buildings, co-authored by my colleagues at John A. Martin & Associates and Stanford University.

I have served as manuscript reviewer for a number of technical journals with international circulation, including but not limited to such prestigious journals like the Bulletin of the Seismological Society of America, Earthquake Spectra, the Journals of Structural Engineering and Engineering Mechanics of the American Society of Civil Engineers.

I have been invited to chair a session at the 13th World Conference on Earthquake Engineering, in Vancouver, Canada in August 2004. Furthermore, I have been asked and have delivered talks at venues such as the Pacific Earthquake Engineering Research Center at University of California-Berkeley in winter 2006, the International Institute of Earthquake Engineering and Seismology in June 2007, University of California, Los Angeles in November 2006, Los Angeles Tall Buildings Structural Design Council in Sept. 2006, the Structural Engineering Association of Southern California in 2005, and University of Southern California in Oct. 22, 2005, and West Tennessee Structural Engineers Association in May 2004.

Cordially,

Arzhang Alimoradi, Ph.D., EIT

August 16, 2007

Dr. Farzad Naeim, Esq.
General Counsel
John A. Martin & Associates, Inc. (JAMA)
1212 S. Flower Street, 4th Floor
Los Angeles, CA 90015

RE:  Filing a Complaint with State Bar of California Against You.

Dear Dr. Naeim:

I have been advised by my attorney, Mr. Eric Avazian, to file a complaint against you with the State Bar of California with regards to your ineffective assistance as my counsel in promptly filing for my work authorization as required by regulations for my adjustment of status, in order to rectify my situation.

I believe my application for adjustment of status is in serious jeopardy due to ineffective assistance of you as my attorney.  As a result of this situation, I have lost my job with subsequent complications that concerns my professional and personal life.

This letter serves to inform you that I have filed a complaint against you with the State Bar of California.

Cordially,

Arzhang Alimoradi, Ph.D., EIT

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X  S B C  ☐ Agent  ☐ Addressee<br>B. Received by ( Printed Name)  C. Date of Delivery |

1. Article Addressed to:

*Office of the Chief Trial Counsel / Intake*

*The State Bar of California*
*1149 South Hill Street*
*Los Angeles, CA 90015- 2299*

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article
(Trans

PS Form 3811, February 2004

2595-02-M-1540

OFFICE OF CHIEF TRIAL COUNSEL/INTAKE
The State Bar of California
1149 South Hill Street
Los Angeles, CA  90015-2299

Name

ARZHANG ALIMORADI
221 S MARENGO AVE #13
PASADENA CA 9110

Street

City                    State    Zip
33  C017

August 22, 2007

Dr. Arzhang Alimoradi
221 S. Marengo Ave., #13
Pasadena, CA 91101

Re: <u>Your Complaint to the State Bar of California</u>

Dear Dr. Alimoradi

I have received your letter dated August 16, 2007 notifying me that you have filed a compliant against me with the State Bar of California's attorney disciplinary authorities. I fully understand the terrible plight you are in. I also understand that you need to do everything in your power to rectify your current situation even if that includes reporting me to the State Bar of California.

I feel terrible about this situation. As you know, I always had your best interests as well as that of John A. Martin and Associates (JAMA) in mind and I never intended to harm your situation or imagined that faithfully following my legal advice would cause you the harm it has.

I am willing to do whatever I can to help rectify your situation. I have attached an affidavit explaining my position, as well as that of JAMA.

Sincerely,

Farzad Naeim, Ph.D., S.E., Esq.

Enclosure

1212 S. Flower Street, 4th Floor
Los Angeles, CA 90015

Phone: (213) 483-6490
Fax: (213) 483-3084
E-mail: farzad@johnmartin.com
Website: www.johnmartin.com


August 22, 2007

# AFFIDAVIT

I, Farzad Naeim, declare that the following is true to the best of my knowledge and belief:

1. I am an attorney authorized to practice law in California and before U.S. District Courts of Northern, Central, and Southern districts of California.

2. I currently am and have been since June 10, 2003 the General Counsel of John A. Martin & Associates, Inc. (JAMA).

3. Dr. Alimoradi was hired by JAMA on January 3, 2005 on an Optional Practical Training valid until January 2, 2006.

4. Due to Dr. Alimoradi's extraordinary scientific and research qualifications which were very unusual for a person of his age, I was instructed to extend my outmost efforts to (1) obtain a long term employment authorization for him so that the company can keep him in employment for a long time and (2) pursue possible means of obtaining a U.S. permanent residency status for him. As a result, less than two months into his hiring by our firm, on February 22, 2005 I filed an I-140 petition for him based on his qualifications as an alien worker as outstanding researcher. This was followed less than two weeks later on April 5, 2005 by filing an I-129 petition for an H1B visa. This clearly demonstrates the value JAMA placed on Dr. Alimoradi, our sensitivity to the issue of authorized employment, and our planning ahead for the future long term and lawful employment of Dr. Alimoradi by JAMA.

5. As a part of preparing the I-129 petition I filed a Labor Condition Application (ETA 9035E). On the second page of this application under "D. Period of Employment and Occupation Information," I clearly stated the end date of employment to be 7/31/2008.

6. On the last page of the approved ETA 9035E, the signature of the Chief of Division of Foreign Labor Certification may be observed stating that this application is <u>certified</u> for the period starting on 8/1/2005 and ending on 07/31/2008.

1212 S. Flower Street, 4th Floor
Los Angeles, CA 90015

Phone: (213) 483-6490
Fax: (213) 483-3084
E-mail: farzad@johnmartin.com

7. I believed then and I continued to believe the same until Dr. Alimoradi showed me the Request for Evidence from USCIS dated 8/1/2007 that this labor certification permitted lawful employment of Dr. Alimoradi by our firm up to 07/31/2008 as long as his application for adjustment of status was pending and he only worked for JAMA.

8. JAMA's I-140 petition for Dr. Alimoradi based on his qualification as an outstanding researcher was approved by USCIS on 8/18/2005. The notice of approval of I-140 was the only document I received from USCIS which indicated that approval of I-140 does not constitute authorization to work. I believed, however, that Dr. Alimoradi was already authorized to work for JAMA until 07/31/2008 and I advised him accordingly.

9. Furthermore, I believed that the filing of the I-485 petition for adjustment of status based on the approved I-140 petition filed by JAMA clearly indicated the intention of both parties (JAMA and Dr. Alimoradi) for continued employment of Dr. Alimoradi by JAMA.

10. I reviewed the I-485 petition prepared by Dr. Alimoradi numerous times. Nowhere on the I-485 form can one find any indication of necessity to file for employment authorization whatsoever. I believed that the mere filing of I-485 would provide Dr. Alimoradi yet one more source of authorization to work and I advised him accordingly. It is only rational to assume that if a company goes through all the troubles of proving to USCIS that an employee is an outstanding researcher that they are sponsoring and paying all the fees for all the filings including I-140 and I-485 filings that they intend to keep that employee employed. I was so certain of this matter that I decided not to pursue the H1B visa any further because I was very confident that we were on solid grounds and Dr. Alimoradi's adjustment of status would be achieved shortly.

11. From the time the I-140 petition for Dr. Alimoradi was approved, I instructed him to routinely and frequently check on the status of his I-485 petition. At least once a month he made an inquiry to make sure that things were processing well and there were no problems. Each time after his inquiry I would sit down with him and review the content of USCIS response. This process of monthly checking of status went on for two years. Never, ever during these monthly inquires any indication of a need for work authorization whatsoever was mentioned by USCIS except in the Request for Evidence dated 8/1/2007.

12. I was very much surprised when on 8/7/2007 Dr. Alimoradi showed me the Request for Evidence from USCIS dated 8/1/2007 asking for evidence of work authorization from 2/2/2006 to date. I immediately started a research which indicated to me that Dr. Alimoardi may have needed an Employment Authorization Document (EAD). On the same day, I had the company make out a check for payment of the fees necessary for obtaining an EAD for Dr. Alimoradi, made sure that he placed the EAD application and the check in the mail to USCIS

and advised him that he should not rely on my legal advice from this point on, and that it was urgent for him to seek outside legal counsel.

13. Upon further investigation, in order not to further harm Dr. Alimoradi's prospect for adjustments of status and protect JAMA, on 8/13/2007 I advised JAMA to place Dr. Alimoradi on leave without pay. I also informed Dr. Alimoradi that his employment with JAMA is suspended without pay until the resolution of his adjustment of status with USCIS.

14. I understand that to attorneys with substantial experience in immigration law, some matters may seem trivial. These same issues were not apparent at me. Providing legal counsel to Dr. Alimoardi was my first and only exposure to immigration law as I had never before been involved in such matters as an attorney. Given the importance of this task I tried my best to stay on the top of it. I reviewed every piece of correspondence with USCIS promptly and diligently. I never saw any indication in any of these communications over the period of two years for a need to file an I-765 form.

15. I am not a stupid person or attorney. I hold a Ph.D. in engineering. I am a licensed California Structural and Civil Engineer. I have published two textbooks that are used by top tier universities worldwide and I have more than 120 publications in peer reviewed scientific journals and conferences. In addition, I have developed more than 45 different software systems. I attended law school while working full time as the vice president of a major engineering firm, graduated with highest honors at the top of my class and passed both the California Bar and Patent Bar exams on the first attempt. If a person like me gets lost in the jungle of immigration law process and procedures, then I believe that other attorneys can get lost as well. This system does not need to be as complex and convoluted as it is particularly when it deals with distinguished scholars such as Dr. Alimoardi and internationally recognized engineering firms such as JAMA which during its entire 55 years of existence has only sponsored two persons (including Dr. Alimoradi) for adjustment of status.

16. Neither JAMA nor Dr. Alimoradi has ever had any intention of employment without authorization for any duration at all. Each year JAMA spends millions of dollars on employee related expenses. I would not have hesitated for a minute to have JAMA pay a few hundred dollars to obtain an EAD for Dr. Alimoradi if I had the slightest suspicion that such filing would be necessary. I would not have placed his status at risk and my own job and reputation at serious jeopardy to save a few hundreds or thousands of dollars of company funds which I could have had quite easily allocated to this matter .

17. Dr. Alimoradi is not only one of the most talented researchers that I have come to know over a period of 25 years of being involved with engineering research, but even more importantly, he is one of the most decent, hardworking, and gentle human beings I have ever known. I have no doubt that if given the opportunity; he will one day make the entire U.S. scientific community immensely proud to have

him as one of their own. It is very unfortunate that the current situation has caused him to lose his employment, his source of income, and has endangered his prospects of contributing to a country that he loves so dearly.

Farzad Naeim

Exhibit "C"

U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521



**U.S. Citizenship
and Immigration
Services**

OCT : 0 2007

Refer to File Number:
A99 059 412/WAC-06-007-50443

ARZHANG ALIMORADI
C/O ERIC AVAZIAN ESQ
800 WILSHIRE BLVD STE 1500
LOS ANGELES CA 90017

Dear Sir or Madam:

Case Type:   Form I-485, Application to Register Permanent Residence or Adjust Status
Beneficiary: Arzhang Alimoradi

## INTENT TO DENY

This notice refers to the Form I-485, Application to Register Permanent Residence or Adjust Status you filed
with this office on September 30, 2005.

Statute and regulations restrict the eligibility of certain aliens to apply for adjustment of status.  See sections
245(a) and (c) of the Immigration and Nationality Act, as amended, and Title 8, Code of Federal Regulations,
Part 245.1(b).

The information filed with this application and/or contained in Service records appears to establish that you
are an alien subject to the restrictions in eligibility to adjust status.  The record indicates that subsequent to
your last lawful admission to the U.S., you were employed in the U.S. without authorization by this Service.
The following statutory and regulatory provisions require such authorization:

Section 245(c) of the Immigration and Nationality Act, as amended:

> Subsection (a) shall not be applicable to ...(8) any alien who was employed while the alien was an
> unauthorized alien, as defined in section 274A(h)(3), or who has otherwise violated the terms of a
> nonimmigrant visa.

Section 274A(h)(3) of the Immigration and Nationality Act, as amended:

> DEFINITION OF UNAUTHORIZED ALIEN -- As used in this section, the term "unauthorized
> alien" means, with respect to the employment of an alien at a particular time, that the alien is not at
> that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so
> employed by this Act or by the Attorney General.

Title 8, Code of Federal Regulations, Part 274a.1(a) states, in pertinent part:

Nebraska Service Center

The term unauthorized alien means, with respect to employment of an alien at a particular time, that the alien is not at that time either (1) Lawfully admitted for permanent residence, or (2) authorized to be so employed by this Act or by the Attorney General;

Title 8, Code of Federal Regulations, Part 274a.12(c) states, in pertinent part:

*Aliens who must apply for employment authorization.* An alien within a class of aliens described in this section must apply for work authorization. If authorized, such an alien may accept employment subject to any restrictions stated in the regulations or cited on the employment authorization document:

Title 8, Code of Federal Regulations, Part 274a.12(c)(9):

*An alien who has filed an application for adjustment of status to lawful permanent resident pursuant to part 245 of this chapter.* For purposes of section 245(c)(8) of the Act, an alien will not be deemed to be an "unauthorized alien" as defined in section 274A(h)(3) of the Act while his or her properly filed Form I-485 application is pending final adjudication, if the alien has otherwise obtained permission from the Service pursuant to 8 CRF 274a.12 to engage in employment, or if the alien has been granted employment authorization prior to the filing of the adjustment application and such authorization does not expire during the pendency of the adjustment application.

## Section 245(k) of the Immigration and Nationality Act

Further, section 245(k) of the Immigration and Nationality Act permits the adjustment of status of certain aliens who are the beneficiaries of immigrant petitions filed under section 203(b)(1)(2)(3) or 203(b)(4) (Special Immigrant Religious Workers), under certain circumstances prescribed by the statute below.

Section 245(k) of the Immigration and Nationality Act states in pertinent part:

An alien who is eligible to receive an immigrant visa under paragraph (1), (2), or (3) of the section 203(b), (or in the case of an alien who is an immigrant described in section 101(a)(27)(C) under section 203(b)(4)) may adjust status pursuant to subsection (a) and notwithstanding subsection (c)(2), (c)(7), and (c)(8) if the alien, on the date of the filing an application for adjustment of status, is present in the United States pursuant to a lawful admission;

The alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days-

failed to maintain, continuously, a lawful status;
engaged in unauthorized employment; or
otherwise violated the terms and conditions of the alien's admission.

A review of Service records indicates that you received employment authorization for optional training from January 3, 2005 to January 2, 2006. However, since January 2, 2006 you have worked without authorization. It is unfortunate that a previous attorney gave you erroneous advice. However, it was ultimately your responsibility to secure work authorization.

In light of the above, the record does not demonstrate that you qualify for section 245(k) of the Act, as the record shows that you engaged in unauthorized employment, or otherwise violated the terms and conditions of your nonimmigrant visa, for a period in excess of 180 days since your last lawful entry.

## Section 245(i) of the Immigration and Nationality Act

Public Law 105-119, section 1111(a) amended section 245(i) of the Immigration and Nationality Act to limit the provisions of section 245(i) to applicants who is are the beneficiaries of a petition under section 204 or labor certification filed on or before January 14, 1998. Title XV of Public Law 106-554 section 1502 extended the section 245(i) sunset date to April 30 2001. This amendment also requires that those aliens who are beneficiaries of a visa petition or labor certification filed after January 14, 1998 are physically present in the United States on December 21, 2000, the date of the enactment.

Section 245(i) of the Immigration and Nationality Act states, in pertinent Part:

> Notwithstanding the provisions of subsections (a) and (c) of this section,
> An alien physically present in the United States
> (A)   who entered without inspection;  or is within one of the classes enumerated in subsection (c) of this section;
> (B) who is the beneficiary ...of a petition for classification under section 204 that was filed with the Attorney General on or before  April 30, 2001; or,
> an application for a labor certification under section 212(a)(5)(A) that was filed pursuant to the regulations of the Secretary of Labor on or before such date; and
> (C) who, in the case of a beneficiary of such a petition or application that was filed after January 14, 1998, is physically present in the United States as of the date of the enactment of the LIFE Act Amendments of 2000 ....may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence...if the alien remits with such application a sum equaling $1000.00.

Further, Title 8, Code of Federal Regulations, Part 245.10(d) states, in pertinent part:

> (d) Pending adjustment application with the Service or Executive Office for Immigration Review filed without Supplement A to Form I-485 and additional sum. An alien who filed an adjustment of status application with the Service in accordance with § 103.2 of this chapter will be allowed the opportunity to amend such an application to request consideration under the provisions of section 245(i) of the Act, if it appears that the alien is not otherwise ineligible for adjustment of status. The Service shall notify the applicant in writing of the Service's intent to deny the adjustment of status application, and any other requests for benefits that derive from the adjustment application, unless Supplement A to Form I-485 and any required additional sum is filed within 30 days of the date of the notice...

The record indicates that you are not eligible to overcome the restrictions of section 245(c) of the Act by submitting a Supplement A to Form I-485 and the additional sum of $1000.00, as you are not the beneficiary of a visa petition filed under section 204 or labor certification filed on or before April 30, 2001.

In view of the above, the record shows that you do not qualify for adjustment of status, as you are subject to the restrictions of section 245(c) of the Act. Your application may therefore be denied.

You are hereby afforded an opportunity to respond to this intended denial. If you believe that you are not subject to the restrictions enumerated section 245(c) of the Immigration and Nationality Act or Title 8, Code of Federal Regulations, Part 245.1(b); or, if you believe that you qualify to adjust your status by way of section 245(k) or 245(i) of the Act, you may submit documentary evidence to support your contention.

Title 8, Code of Federal Regulations, Part 103.5a(b) requires that three days be added to the thirty-day period when the notice is served by mail. This office must receive such evidence within thirty-three (33) days of the date of this notice. A decision on your eligibility will then be made.

PLEASE REFER TO THE FILE NUMBER REFERENCED ABOVE WHEN SUBMITTING YOUR RESPONSE. FAILURE TO RESPOND TO THIS NOTICE WITHIN THIRTY-THREE (33) DAYS WILL RESULT IN THE DENIAL OF YOUR FORM I-485.

Sincerely,

F. Gerard Heinauer
Director
NSC/MJG480

Exhibit "D"

ARTHUR AVAZIAN
A PROFESSIONAL CORPORATION
E-MAIL: aavazian@avazianlaw.com

ARMAND AVAZIAN
E-MAIL: armandavazian@avazianlaw.com

# AVAZIAN & AVAZIAN
*Attorneys at Law*
800 WILSHIRE BOULEVARD
SUITE 1500
LOS ANGELES, CALIFORNIA 90017-2619
TELEPHONE (213) 624-1793
FACSIMILE (213) 891-2890

ERIC AVAZIAN
A PROFESSIONAL CORPORATION
E-MAIL: eavazian@avazianlaw.com

November 5, 2007

**Via Express Mail**

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
P.O.Box 82521
Lincoln, NE 68501-2521

**Attention: F. Gerard Heinauer, Director**

Re:    Case Type: Form I-485. Application to Register Permanent
          or Adjust Status
          Beneficiary: Arzhang Alimoradi – A099-059-412

## RESPONSE TO INTENT TO DENY

Dear Mr. Heinauer:

This is in reply to your Intent to Deny in the above referenced matter.

Your decision accurately states the facts and most of the relevant statutes. However, it does not address the sole critical issue of "ineffective assistance of counsel." Your decision completely ignored the exception to "unauthorized employment" set forth in *INA 245 (c)* and cited by applicant in the previous filing.

### *[INA § 245 (c)]*

**(c) Alien Crewmen, Aliens Continuing or Accepting Unauthorized Employment, and Aliens Admitted in Transit Without Visa.**

*Other than an alien having an approved petition for classification as a VAWA self-petitioner, subsection (a) shall not be applicable to (1) an alien crewman; (2) subject to subsection (k), an alien (other than an immediate relative as defined in section 201(b) or a special immigrant described in section 101(a)(27)(H), (I), (J), or (K) who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (**other than through no fault of his own or for***

1

*technical reasons)* to maintain continuously a lawful status since entry into the United States.

Your decision also did not consider the exception to continuously maintaining legal status stated in *8CFR245.1 (b)(6)* as follows:

> *(6) Any alien who files an application for adjustment of status on or after November 6, 1986,who has failed **(other than through no fault of his or her own** or for technical reasons to maintain continuously a legal status since entry into the United States, except an applicant who is an immediate relative as defined in section 201(b) of the Act or a special immigrant as defined in section 101(a)(27)(H), (I) or (J) of the Act.*

The phrase "no fault of the applicant or for technical reasons" is defined in *8CFR 1245.1 (d)(2)(i)* as follows:

> *(2) No fault of the applicant or for technical reasons. The parenthetical phrase "other than through no fault of his or her own or for technical reasons" shall be limited to:*

> *(1) Inaction of another individual or organization designated by regulation to act on behalf of an individual and over whose actions the individual has no control, if the inaction is acknowledged by that individual or organization.*

The other individual here is former attorney Farzad Naeim and the organization is his employer John A Martin and Associates. The applicant relied completely on their advice and had no control over them. Further, attorney Naeim has acknowledged his error via his letter previously submitted as also required by the regulations.

It is clear and admitted by the applicant's previous attorney that the applicant accepted unauthorized employment at "no fault of his own". This was a tragic error of a corporate attorney who was not a specialist in immigration law. It is merely a perfunctory application (I765) which was not filed with the I485 application. It would have automatically been approved as a matter of course.

This case falls squarely within the meaning and intent of **8CFR 1245.1 (d)(2)**. If this case does not, one cannot imagine another case scenario to ever fall within this regulation.

The intent of federal regulations is to provide relief to individuals who are the objects of ineffective assistance of counsel as further evidenced in *8CFR 208.4(4)* and *(5) (iii).* These sections provide exceptions to the regulation which requires the filing of an application for asylum within one year of entry into the United States. One of the exceptions is "ineffective assistance of counsel" if certain conditions are met. We have submitted evidence that the applicant has met all of the conditions as required in the regulation and in the landmark case of *Matter of Lozada.* Enclosed for your ready reference is a copy of *8CFR 1208.4*

Based upon the above regulations, we believe that Dr. Almoradi is eligible to receive relief as the victim of "ineffective assistance of counsel." This relief is not limited to judicial proceedings. If his application and appeal are denied he would have to remain out of status and unemployed for perhaps two years before he would certainly be granted relief by an immigration judge.

This case presents a unique dichotomy in that Dr. Almoradi is applying for his residency based upon the Service's decision that his professional expertise and contributions are in the "national interest" of the United States. This should add substantially to the equities in favor of an affirmative decision. Enclosed are the following documents to support such a decision:

- Letter of petitioner;
- Letter of Farzad Naeim, general counsel of petitioner;
- Letter of Jack P Moehle, Professor and Director, University of California, Berkeley.
- Najmedin Meshkati, Ph.D CPE Department of Civil/Environment Engineering.
- Jonathan P. Stewart, Ph.D PE, Henry Samuel School of Engineering.
- Susan K. Tubbesing, Executive Director, Earthquake Engineering Research Institute.
- Letter of Adam B. Schiff, Member of Congress
- Curriculum Vitae of Dr. Alimoradi.

Please approve the application for adjustment of status in order that Dr. Alimoradi may remain in the United States to work and contribute to the advancement of earthquake research.

Thank you for your cooperation and assistance.

Very truly yours,

Eric Avazian, Esq.

EA/ak
Enclosures

3

Exhibit "E"

**U.S. Department of Homeland Security**
P.O. Box 82521
Lincoln, NE 68501-2521



U.S. Citizenship
and Immigration
Services

January 15, 2008

Refer To File No. WAC0600750443


A099059412

ARZHANG ALIMORADI
C/O ERIC AVAZIAN
AVAZIAN AND AVAZIAN
800 WILSHIRE BLVD SUITE 1500
LOS ANGELES CA 90017

Dear Sir or Madam:

RE: Form: I485 APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS
    Beneficiary:    ALIMORADI, ARZHANG

## Decision

This notice refers to the Form I-485, Application to Register Permanent Residence or Adjust Status you filed with this office on September 30, 2005. You are requesting adjustment of status under section 245 of the Immigration and Nationality Act, as amended.

Statute and regulations restrict the eligibility of certain aliens to apply for adjustment of status. See sections 245(a) and (c) of the Act and Title 8, Code of Federal Regulations, Part 245.1(b).

Section 245(c) of the Immigration and Nationality Act, as amended states:

Subsection (a) shall not be applicable to ...(8) any alien who was employed while the alien was an unauthorized alien, as defined in section 274A(h)(3), or who has otherwise violated the terms of a nonimmigrant visa.

Section 274A(h)(3) of the Immigration and Nationality Act, as amended states:

DEFINITION OF UNAUTHORIZED ALIEN -- .... the term "unauthorized alien" means.... that the alien is not...either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this Act or by the Attorney General.

Title 8 Code of Federal Regulations Part 245.1(b) states, in pertinent part:

Restricted Aliens....

(10) Any alien who was ever employed in the United States without authorization of the Service.... For purposes of this paragraph an alien who meets the requirements of § 274a.12(c)(9) of this chapter shall not be deemed to have engaged in unauthorized employment during the pendency of his or her adjustment application.

Title 8, Code of Federal Regulations, Part 274a.12(c)(9) states:

Nebraska Service Center                                                     www.uscis.gov

An alien who has filed an application for adjustment of status to lawful permanent resident pursuant to part 245 of this chapter. For purposes of section 245(c)(8) of the Act, an alien will not be deemed to be an "unauthorized alien" as defined in section 274A(h)(3) of the Act while his or her properly filed Form I-485 application is pending final adjudication, if the alien has otherwise obtained permission from the Service pursuant to 8 CRF 274a.12 to engage in employment....

Section 245(k) of the Act permits the adjustment of status of certain aliens who are the beneficiaries of immigrant petitions filed under section 203(b)(1), 203(b)(2), 203(b)(3) or 203(b)(4) (Special Immigrant Religious Workers), despite limited unauthorized employment or violations of status. The provisions of this statute are given below.

Section 245(k) of the Immigration and Nationality Act states, in pertinent part:

An alien who is eligible to receive an immigrant visa under paragraph (1), (2), or (3) of the section 203(b), (or in the case of an alien who is an immigrant described in section 101(a)(27)(C) under section 203(b)(4)) may adjust status pursuant to subsection (a) and notwithstanding subsection (c)(2), (c)(7), and (c)(8)if-

(1) the alien, on the date of the filing an application for adjustment of status, is present in the United States pursuant to a lawful admission;
(2) the alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days-
    (A) failed to maintain, continuously, a lawful status;
    (B) engaged in unauthorized employment; or
    (C) otherwise violated the terms and conditions of the alien's admission.

The documentation submitted with this application and/or contained in Service records indicates that you have worked without authorization from January 2, 2006 to October 23, 2007.

In Service correspondence dated October 10, 2007, you were notified that it was the intent of the Service to deny your application. You had worked without authorization since January 2, 2006 and you were not eligible under 245(k) or (i).

Upon resubmission, you agreed that you had worked without authorization for more than 180 days. However, you indicated that it was by no fault of your own. You indicated that it was the fault of your attorney that you had been working without authorization. The attorney submitted a letter stating the same.

It is unfortunate that you were given erroneous information from your attorney. However, it was ultimately your responsibility to work with your attorney to follow the Immigration laws and obtain work authorization.

In light of the above, the record does not demonstrate that you qualify for section 245(k) of the Act, as the record shows that you engaged in unauthorized employment, or otherwise violated the terms and conditions of your nonimmigrant visa for a period in excess of 180 days since your last lawful admission.

Your application has therefore been reviewed to determine your eligibility to overcome the restrictions of section 245(c) of the Act and seek adjustment of status under section 245(i) of the Act.

Section 245(i) of the Immigration and Nationality Act, as amended, and Title 8, Code of Federal Regulations, Parts 245(1)(b) and 245.10, permit certain aliens who are subject to the restrictions of 245(c) of the Act to overcome those restrictions and amend their adjustment application by submitting Supplement A to Form I-485 and a fee of $1,000.00.

Public Law 105-119 amended section 245(i) of the Act on November 26, 1997, to include only those applicants

who are beneficiaries of an immigrant petition under section 204, or labor certification, which was filed on or before January 14, 1998.

On December 21, 2000 Title XV of HR 5666, Public Law 106-554 further amended 245(i) of the Act to include those applicants who are beneficiaries of an immigrant petition under section 204 or labor certification filed on or before April 30, 2001. This amendment also requires applicants who are beneficiaries of an immigrant petition under section 204, or labor certification filed after January 14, 1998, to demonstrate that they were physically present in the United States on the December 21, 2000 enactment date.

Public Law 106-554 amended section 245(i) of the Immigration and Nationality Act as follows:

Notwithstanding the provisions of subsections (a) and (c) of this section,
An alien physically present in the United States

(A) who entered without inspection; or is within one of the classes enumerated in subsection (c) of this section;

(B) who is the beneficiary ...of a petition for classification under section 204 that was filed with the Attorney General on or before April 30, 2001; or,

(ii) an application for a labor certification under section 212(a)(5)(A) that was filed pursuant to the regulations of the Secretary of Labor on or before such date; and,

(C) who, in the case of a beneficiary of such a petition or application that was filed after January 14, 1998, is physically present in the United States on the date of the enactment of the LIFE Act Amendments of 2000, ...may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence...if the alien remits with such application a sum equaling 1000.00.

Title 8, Code of Federal Regulations, Part 245.10(d) states in pertinent part:

(d) Pending adjustment application with the Service or Executive Office for Immigration Review filed without Supplement A to Form I-485 and additional sum. An alien who filed an adjustment of status application with the Service in accordance with § 103.2 of this chapter will be allowed the opportunity to amend such an application to request consideration under the provisions of section 245(i) of the Act, if it appears that the alien is not otherwise ineligible for adjustment of status. The Service shall notify the applicant in writing of the Service's intent to deny the adjustment of status application, and any other requests for benefits that derive from the adjustment application, unless Supplement A to Form I-485 and any required additional sum is filed within 30 days of the date of the notice...

The record indicates that you are not eligible to overcome the restrictions of section 245(c) of the Act by submitting a Supplement A to Form I-485 and the additional sum of $1000.00, as you are not the beneficiary of a visa petition filed under section 204 or labor certification filed on or before April 30, 2001.

In view of the above, you are ineligible to adjust your status under section 245 of the Act.

Therefore, your application must be and hereby is denied.

In Matter of Tanahan, 18 I&N Dec. 339 (Reg. Comm. 1981) it was found that an applicant for adjustment of status under section 245 of the Act who meets the objective prerequisites is merely eligible to apply for adjustment of status. An alien is in no way entitled to adjustment. When an alien seeks the favorable exercise of Service discretion, it is incumbent upon that alien to establish that he or she merits adjustment.

The regulations do not provide for an appeal to this decision.

Sincerely,

F. Gerard Heinauer
Director
NSC/MJG EX480

**Exhibit "F"**

# *Arzhang Alimoradi, Ph.D., EIT*

John A. Martin & Associates, Inc.
Research and Development Department
950 S. Grand Ave., 4th Floor,
Los Angeles, CA 90015

Phone: (626) 487-1242
Fax: (213) 483-3084
arzhang@members.asce.org
http://www.johnmartin.com/research/index.htm

*As of December 2007*

## Current Position:

Senior Research Engineer, John A. Martin & Associates, Inc., R&D Department
Lecturer, University of Southern California

Responsible for development of computational tools for applications in structural and earthquake engineering, successful examples are: a genetic algorithm-based structural identification system, a fuzzy damage detection methodology, and a genetic algorithm search and scaling tool for selection and optimal scaling of strong ground motion records for seismic analysis and design.

Responsible for implementation and application of nonlinear inelastic second-order structural analysis methodologies, including response verification and software development; involved with analysis, design, and retrofit of complex structural systems under extreme loading scenarios on a daily basis.

Teaching graduate level classes in structural and earthquake engineering curriculum, frequent lecturer at major research universities.

Senior investigator of R&D projects in the areas of nonlinear response, system identification, ground motion studies, and soil-structure interaction.

## Objectives:

To actively and rigorously contribute to the state-of-the-art and –practice of structural and earthquake engineering through teaching, research and development, and service:

Teaching:
Undergraduate and graduate courses on structural analysis and design, engineering mechanics, structural dynamics and earthquake engineering (engineering seismology, structural and geotechnical earthquake engineering, random vibration), nonlinear structural analysis, limit and plastic analysis, as well as mentoring graduate students.

Research and Development (R&D):
Working towards soliciting external funds for fundamental research and increased citation in the areas of interest (please see page 14) with collaboration with national and international academia and research institutions. Incorporating professional and practical

needs in research through active involvement with local and global structural engineering association.

Analysis, Design, and Evaluation:
Modern structural systems, tall buildings in seismic regions, earthquake engineering, engineering seismology and strong ground motion, advanced structural analysis and evaluation (second-order inelastic nonlinear response), vibration isolation and damping devices, system identification.

Technology Adaptation and Implementation:
Automation of new seismic design and evaluation model codes and methodologies in software.

## Education:

Ph.D., Department of Civil Engineering, (GPA: 4.0/4.0, Herff College of Engineering Fellow), The University of Memphis, Memphis, TN
        Concentration: Earthquake Engineering, December 2004
                Dissertation Title: *Automated Performance-Based Seismic Design Optimization of Nonlinear Steel Structural Systems Using Genetic Algorithms*

Graduate Studies in Data Mining and Pattern Recognition, Department of Electrical and Computer Engineering, The University of Memphis, Memphis, TN
                Project title: *Soft Computing in Earthquake Ground Motion Data Analysis*

M.S., Structural Earthquake Engineering Division, International Institute of Earthquake Engineering and Seismology (IIEES), Tehran, Iran
        Concentration: Structural Earthquake Engineering, March 1999
                Thesis title: *Development of a Software Environment to Study Different Attributes of a Genetic Algorithm-Based Active/Hybrid Structural Control System.* Awarded the highest thesis evaluation at IIEES for the first time

B.S., Structural Engineering, Azad University, Iran, May 1996

## Certificates and Registrations:

- Passed the breath and depth national PE exams as well as California specific seismic exam, 2007
- Engineer-in-Training, State of California, January 2006
- Certificate of Earthquake Science and Engineering
        Mid-America Earthquake Center, University of Illinois at Urbana-Champaign, Course Work at Texas A&M University and at the University of Memphis, 2003

- Earthquake Reconnaissance Training
  Earthquake Engineering Research Institute, 2002
- Design and Retrofit Certificate
  Ottawa-Carleton Earthquake Engineering Research Center
  University of Ottawa, Canada, 2000
- Certificates of Training for Teaching Assistants
  o The University of Memphis, Memphis, TN, 2004
  o Carleton University, Ottawa, Canada, 2000

## Professional Membership and Service:

- *Earthquake Engineering Research Institute (EERI)*, 1998-present:
  Young Professional Member
  Chair of the Younger Members Committee, 2006-present
  Core Member of the Information Technology Committee
  Member of the Strong Motion Committee
  Member of the Committee on Heritage and Existing Structures

  EERI backup person for northern California earthquake reconnaissance

  Member of the Organizing Committee, the 2007 Annual Meeting of the
  Earthquake Engineering Research Institute, Universal City, Hollywood, CA.

- *American Society of Civil Engineers (ASCE)*, September 2000-present:
  Associate Member
  Secretary and Controller of the SEI Technical Activities Division:
  o Optimal Structural Design, Technical Administrative Committee on
    Analysis and Computation, Term: 10/1/2005 to 9/30/2011
  Member of the SEI Technical Activities Division:
  o Emerging Computing Technologies, Technical Administrative Committee
    on Analysis and Computation, Term: 10/1/2005 to 9/30/2011
  Friend of the SEI Technical Activities Division:
  o Seismic Effects, Technical Administrative Committee on Dynamic Effects

- *George E. Brown Jr. Network for Earthquake Engineering Simulation (NEES)*,
  2003-present
- *Seismological Society of America (SSA)*, 2005-present
- *International Association for Computational Mechanics (IACM)*, 2006-present
- *United States Association for Computational Mechanics (USACM)*, 2006-present
- *American Academy of Mechanics (AAM)*, 2008-present
- *International Institute of Earthquake Engineering and Seismology (IIEES)*, 1997-
  Present
- *Structural Engineers Association of Southern California (SEAOSC)*, 2002-
  present:
  Member of the Seismology Committee

- *Council on Tall Buildings and Urban Habitat*, 2003-2004
- *Canadian Association for Earthquake Engineering (CAEE)*, 1999-present
- *Institute of Electrical and Electronics Engineers (IEEE)*, 2001
- *BISC*, The Berkeley Initiative in Soft Computing, 2003-present

## Work Experience:

**Senior Seismic Research Engineer**                    **Jan. 2005 – Present**
   John A. Martin & Associates, Inc., Los Angeles, California
   Responsible for analysis, design, and seismic retrofitting of complex structural
   systems, responsible for implementation and application of new nonlinear
   inelastic seismic evaluation methods and upgrading the in-house design and
   analysis software, also implementation of rapid damage detection techniques
   through automated system identification.

**Lecturer**                                            **Fall Semester 2007**
   CE-540: Limit and Plastic Analysis of Structures (Graduate Level), Department of
   Civil and Environmental Engineering, University of Southern California, Los
   Angeles, CA

**Consultant**                                          **May 2004 – Present**
   2004 Data Interpretation Project, California Strong Motion Instrumentation
   Program (CSMIP), R&D Department of John A. Martin & Associates, Funded by
   California Geological Survey

**Part-time Lecturer**                                  **March 2004**
   Earthquake Resistant Design (Graduate Level), Department of Civil Engineering,
   The University of Memphis, Memphis, TN

**Herff College of Engineering Fellow**                 **Sept. 2001 – August 2004**
   The University of Memphis, Memphis, TN

**Research Assistant**                                  **Sept. 2001 – Dec. 2004**
   Mid-America Earthquake Center through Department of Civil Engineering and
   Center for Earthquake Research and Information (CERI), The University of
   Memphis, Memphis, TN

**Teaching Assistant:**                                 **Sept. 2000- Dec. 2003**
- Grader for Reinforced Concrete Design, Fall 2003
      Department of Civil Engineering, The University of Memphis,
      Memphis, TN
- Grader/Tutor for Earthquake Engineering and Analysis (Graduate Level),
      Winter 2001, Department of Civil and Environmental Engineering,
      Carleton University, Ottawa, Canada
- Grader/Tutor for Dynamics of Structures (Graduate Level),
      Winter 2001, Department of Civil and Environmental Engineering,
      Carleton University, Ottawa, Canada
- Tutor/Lecturer for Engineering Mechanics-Static and Dynamics,
      Fall 2000, Department of Civil and Environmental Engineering,
      Carleton University, Ottawa, Canada

**Research Engineer** Jan. 2000 – Sept. 2001
 Ottawa-Carleton Bridge Research Institute, Ottawa, Canada
 Artificial Intelligence-Based Online Structural Health Monitoring of the
 Confederation Bridge
**Field Instructor of Surveying** Summer 2000
 Department of Civil and Environmental Engineering, Carleton University,
 Ottawa, Canada
**Structural Design Engineer** Summer 1996
 Borhan va Andisheh Consulting Engineers, Tehran, Iran
  District E buildings of Pardis New City
**Construction Engineer** 1998 – 1999 and 1994 – 1995
- Sanat Pole (Bridge Industry), Karaj, Iran
   Sarhad Abad railway reinforced concrete arch bridge
- Sanat Pole (Bridge Industry), Tehran, Iran
   Ghale Morghi intersections project


## Publications:

*Peer Reviewed Journal Papers:*

1. Alimoradi, A., and E. Kalkan, (2007). "A Vector-Valued Ground Motion Intensity Measure Considering Bound of Spectral Energy," Submitted for publication in *Earthquake Engineering and Structural Dynamics*, Wiley InterScience
2. Foley, C.M., S. Pezeshk, and A. Alimoradi, (2007). "Probabilistic Performance-Based Optimal Design of Steel Moment-Resisting Frames. I: Formulation," *Journal of Structural Engineering*, Vol. 133, No. 6, pp. 757-766, American Society of Civil Engineers.
3. Alimoradi, A., S. Pezeshk, and C.M. Foley, (2007). "Probabilistic Performance-Based Optimal Design of Steel Moment-Resisting Frames. II: Applications," *Journal of Structural Engineering*, Vol. 133, No. 6, pp. 767-776, American Society of Civil Engineers.
4. Alimoradi, A., E. Miranda, S. Taghavi, and F. Naeim, (2006). "Evolutionary Modal Identification utilizing Coupled Shear-Flexural Response –Implication for Multistory Buildings, Part I: Theory," *Journal of the Structural Design of Tall and Special Buildings*, 15, pp. 51-65, Wiley Interscience
5. Alimoradi, A., and F. Naeim, (2006). "Evolutionary Modal Identification utilizing Coupled Shear-Flexural Response –Implication for Multistory Buildings, Part II: Application," *Journal of the Structural Design of Tall and Special Buildings*, 15, pp. 67-103, Wiley Interscience
6. Naeim, F., H. Lee, S. Hagie, H. Bhatia, A. Alimoradi, and E. Miranda, (2006). "Three-Dimensional Analysis, Rea-Time Visualization, and Automated Post-Earthquake Damage Assessment of Buildings," *Journal of the Structural Design of Tall and Special Buildings*, 15, pp. 105-138, Wiley Interscience
7. Alimoradi, A., S. Pezeshk, F. Naeim, and H. Frigui, (2005). "Fuzzy Pattern Classification of Strong Ground Motion Records," *Journal of Earthquake Engineering*, Vol. 9, No. 3, pp. 307-332, Imperial College Press, U.K.

8. Naeim, F., A. Alimoradi, and S. Pezeshk, (2004). "Selection and Scaling of Ground Motion Time Histories for Structural Design Using Genetic Algorithms," *Earthquake Spectra,* Vol. 20, No. 2, pp. 413-426, May 2004

*Book Chapters:*

9. Alimoradi, A., S. Pezeshk, and C.M. Foley, (2006). *Evolutionary Seismic Design for Optimal Performance*, Chapter under publication in *Intelligent Computational Paradigms in Earthquake Engineering*, Edited by Nikos Lagaros and Yiannis Tsompanakis
10. Naeim, F., S. Hagie, A. Alimoradi, and E. Miranda, (2006). *Automated Post-Earthquake Damage Assessment of Instrumented Buildings,* in Advances in Earthquake Engineering for Urban Risk Reduction, S.T. Wasti and G. Ozcebe (eds.), pp. 117-134, Springer

*Theses and Reports:*

11. Naeim, F., M. Mehrain, and A. Alimoradi, (2006). *Seismic Upgrade of British Columbia Public Schools, Final External Peer Review Report on: "Bridging Performance-Based Guidelines"*, John A. Martin & Associates, Inc. Report No. 11412.
12. Naeim, F., A. Alimoradi, and E. Miranda, (2005). *Automated Post-Earthquake Damage Assessment and Safety Evaluation of Instrumented Buildings*, John A. Martin & Associates, Inc. Report No. 2005-10639, 515 Pages.
13. Alimoradi, A., (2003). *State-of-the-Art in Performance-Based Design Optimization- Inference to Consequence-Based Engineering Optimization*, A report to the Consequence-Based Engineering Institute of the Mid-America Earthquake Center, University of Illinois at Urbana-Champaign, Department of Civil Engineering, The University of Memphis
14. Alimoradi, A., (2002). *Software Utility for Optimal Scaling and Selection of Strong Ground Motion Records for Seismic Design*, Mid-America Earthquake Center Professional-Student Interaction Program, Report (Compact Disk)
15. Alimoradi A., S. Pezeshk, and J. Pujol, (2002). *A Matlab Environment for VSP Data Analysis and Quality Factor Computation of the Mississippi Embayment Sediments*, Mid-America Earthquake Center Project GT-8B (Compact Disk)
16. Alimoradi, A., (2000). Iranian Construction Practice of Steel Moment "Khorjini" Resisting Frame and Bracing, Participation in the *EERI/IAEE Encyclopedia of Housing Construction Types in Seismically-Prone Areas of the World,* http://www.world-housing.net/
17. Alimoradi, A., (1999). *Development of a Software Environment to Study Different Attributes of a Genetic Algorithm Based Active/Hybrid Seismic Structural Control System*, M.Sc. Thesis. Awarded the highest thesis evaluation at IIEES at the time of defense, May 1999
18. Alimoradi, A., (2004). *Probabilistic Performance-Based Seismic Design Automation of Steel Structures Using Nonlinear Response Optimization in a Genetic Algorithm*, Ph.D. Dissertation, The University of Memphis, Memphis, TN, Nov. 2004

*Reviewed Conference Proceedings:*

19. Alimoradi, A., F. Naeim, E. Miranda, and S. Taghavi, (2006). "Evolutionary System Identification of Building Structures Using Coupled Shear-Flexural Response Models," the *8th U.S. National Conference on Earthquake Engineering* (100th Anniversary 1906 San Francisco Earthquake Conference), San Francisco, CA; April 18-22, 2006.

20. Naeim, F., A. Alimoradi, and E. Miranda, (2006). "Automated Damage Assessment of Instrumented Buildings," the *8th U.S. National Conference on Earthquake Engineering* (100th Anniversary 1906 San Francisco Earthquake Conference), San Francisco, CA; April 18-22, 2006.

21. Alimoradi, A., S. Pezeshk, and F. Naeim, (2006). "A Computationally Intelligent Method of Ground Motion Selection for Structural Design," *the Annual Meeting of the Seismological Society of America*, (Part of the 100th Anniversary Earthquake Conference commemorating the 1906 San Francisco earthquake), San Francisco, CA; April 18-22, 2006.

22. Alimoradi, A., F. Naeim, and E. Miranda, (2006). "GA-Based System Identification of Instrumented Buildings," *Structures Congress 2006*, The American Society of Civil Engineers, Saint Louis, MO, May 2006

23. Naeim, F., A. Alimoradi, and E. Miranda, (2005). "Structural Instrumentation Has Opened the Door for Immediate and Automatic Post-Earthquake Damage Assessment," *Structural Engineers Association of California (SEAOC) 2005 Convention*, San Diego, CA

24. Naeim, F., S. Hagie, A. Alimoradi, and E. Miranda, (2005). "Automated Post-Earthquake Damage Assessment and Safety Evaluation of Instrumented Buildings," *SMIP05 Seminar on Utilization of Strong-Motion Data*, California Strong Motion Instrumentation Program, Los Angeles, CA, May 10, 2005.

25. Pezeshk, S., C.M. Foley, and A. Alimoradi, (2004). "Probabilistic Performance-Based Design Using GA-Based Nonlinear Response Optimization," *13th World Conference on Earthquake Engineering*, Vancouver, B.C.

26. Alimoradi, A., F. Naeim, and S. Pezeshk, (2004). "GA-Based Selection and Scaling of Strong Ground Motion Records for Structural Design," *13th World Conference on Earthquake Engineering*, Vancouver, B.C.

27. Alimoradi, A., S. Pezeshk, and C.M. Foley, (2004). "Automated Performance-Based Design of Steel Frames," *2004: Proceedings of the ASCE Structures Congress*, Nashville, Tennessee, ASCE.

28. Alimoradi, A., S. Pezeshk, and F. Naeim, (2004). "Identification of Input Ground Motion Records for Seismic Design Using Neuro-Fuzzy Pattern Recognition and Genetic Algorithms," *2004: Proceedings of the ASCE Structures Congress*, Nashville, Tennessee, ASCE.

29. Foley, C.M., S. Pezeshk, and A. Alimoradi, (2003). "State of the Art in Performance-Based Design Optimization," *2003: Proceedings of the ASCE Structures Congress*, Seattle, Washington, ASCE.

30. Alimoradi, A., and G. Ahmadi, (2002). "Sensitivity Analysis of a GA-Based Active/Hybrid Control System under Near Source Strong Ground Motion,"

*Proceedings of the 7th U.S. National Conference on Earthquake Engineering, (7NCEE),* Boston, Massachusetts, EERI.

31. Pujol, J., S. Pezeshk, and A. Alimoradi, (2002). "A Study on the Variation of the Quality Factor and Shear Wave Attenuation in the Mississippi Embayment Using Borehole Data," *Seventh U.S. National Conference on Earthquake Engineering* (7NCEE), Boston, Massachusetts, July 21-25, Poster Presentation.

32. Pezeshk, S., C.M. Foley, and A. Alimoradi, (2002). "Optimized Performance-Based Seismic Design of Hybrid Structural Steel Systems Using Genetic Algorithms," *Seventh U.S. National Conference on Earthquake Engineering* (7NCEE), Boston, Massachusetts, July 21-25, Poster Presentation.

33. Pezeshk, S., A. Alimoradi, and J. Pujol, (2002). "New Values of $Q_s$ in Unconsolidated Sediments of the Mississippi Embayment," *Earthquake Engineering Research Institute Annual Meeting,* February 6-9, Long Beach, California.

34. Alimoradi, A., (2001). "Performance Study of a Genetic-Algorithm Based Active Structural Control System Under Near Source Strong Ground Motions," *Proceedings of the ASCE Annual Structures Congress 2001,* Washington D.C., ASCE.

35. Alimoradi, A., (1999). "GA-Based Active Structural Control Investigations in Iran," *Proceedings of the 3rd International Conference on Seismology and Earthquake Engineering (SEE3),* International Institute of Earthquake Engineering and Seismology, IIEES, Tehran, Iran.

*Software Systems:*

36. Naeim, F., A. Alimoradi, and S. Hagie, (2007). *PACT, A Software Tool for Performance-Based Seismic Loss Assessment,* John A. Martin & Associates, Inc, funded by Applied Technology Council and the Federal Emergency Management Agency.

37. Naeim, F., A. Alimoradi, S. Hagie, and K. Pacheco, (2006). *Hazus-MH Simulator,* Beta Version, John A. Martin & Associates, Inc.

38. Naeim, F., A. Alimoradi, and S. Hagie, (2005). *JAMA-ADA: Automated Seismic Damage Assessment of Instrumented Buildings,* John A. Martin & Associates, Inc.

*Technical Notes:*

39. Naeim, F., and A. Alimoradi, (2006). "Re-centering Condition for Double-Concave Friction Pendulum Bearings," unpublished

*Code Writing Activities:*

40. Provided technical assistance to the members of the Los Angeles Tall Buildings Structural Design Council in preparation of *An Alternative Procedure for Seismic Analysis and Design of Tall Buildings Located in the Los Angeles Region,* 2005-2007

**Manuscript Reviewer:**

- *Earthquake Spectra*, Professional Journal of the Earthquake Engineering Research Institute
- *Journal of Structural Engineering*, American Society of Civil Engineers
- *Journal of Engineering Mechanics*, American Society of Civil Engineers
- *Bulletin of the Seismological Society of America (BSSA)*, Seismological Society of America
- *The Structural Design of Tall and Special Buildings*, Wiley InterScience
- *International Journal of Seismology and Earthquake Engineering* (JSEE), International Institute of Earthquake Engineering and Seismology
- *Structures Congress 2006*, St. Louis, MO.
- *Intelligent Computational Paradigms in Earthquake Engineering*, Book edited by Nikos Lagaros and Yiannis Tsompanakis

**Research Projects:**

- *Investigation of the Impact of Various Foundation Modeling Techniques on the Accuracy of the Response Obtained from Three-Dimensional Response History Analysis of Buildings*, California Strong Motion Instrumentation Program, Data Interpretation Project 2007
- *Demonstration and Critical Assessment of OpenSees for Realistic Simulation of Building Response*, Pacific Earthquake Engineering Research Center, Funded through National Science Foundation, 2007
- *ATC-58, Next Generation Performance-Based Seismic Engineering*, Programming Consultant, Applied Technology Council, 2006
- *Automated Post-Earthquake Damage Assessment and Safety Evaluation of Instrumented Buildings*, sponsored by the State of California, California Geologic Survey, Strong Motion Instrumentation Program (SMIP), 2005
- Pezeshk, S., A. Alimoradi, and F. Naeim, (2004). *Clustering, Selection, and Optimal Scaling of Strong Ground Motion Records for Structural Design Using Various Soft Computing Constituents*
- Foley, C.M., S. Pezeshk, and A. Alimoradi, (2003). *Automated Performance-Based Seismic Design of Steel Structure*, Marquette University and The University of Memphis
- Naeim, F., A. Alimoradi, and S. Pezeshk, (2003). *Genetic-Algorithm Based Search and Scaling of Strong Ground Motion Records for Structural Design*, Mid-America Earthquake Center Student Practitioner Interaction
- Pezeshk, S., J. Pujol, and A. Alimoradi, (2002). *Regional Site Characterization of Memphis*, Mid-America Earthquake Center Project GT-8
- Alimoradi, A., M. Zhang, and D.T. Lau, (2001). *System Identification and Dynamic Monitoring of the Confederation Bridge Using Artificial Neural Networks*, Ottawa-Carleton Bridge Research Institute, Carleton University, Ottawa, Canada

**Engineering Projects:**

- Nonlinear lateral analysis of Thunder Valley hotel, Las Vegas, NV
- Seismic evaluation of John Douglas French Alzheimer's center, 2007
- Nonlinear incremental analysis of the roof truss/cable system of Thomas and Mack arena, 2007 and 2008
- Nonlinear static analysis of the Cahill Astrophysics Building in the campus of California Institute Technology, 2006
- Seismic analysis and design of 5-story Kaiser hospital in Ontario with buckling-restrained bracing, 2006-2007
- Cracked section analysis and composite coupling beam design of the 18-story Wilshire 3033 residential building, 2006
- Nonlinear finite element analysis of the perforated walls of the Salinas Valley Hospital, 2006
- Seismic evaluation of the Saddleback Memorial Medical Center, Laguna Hills, CA, 2006
- Seismic response evaluation of the 40-story Morgan Center in Beijing, China. The structure utilizes seismic resistance elements such as buckling-restrained bracing system and viscous fluid dampers, 2005
- Buckling and seismic analysis of the 64 feet tall pentagon-shape sculpture of the Orange County, 2005
- Floor vibration analysis and diagnostic of the San Manuel Indian Hotel, Highland, California, 2005

**Invitations:**

- Invited session chair at the 13th World Conference on Earthquake Engineering, Vancouver, Canada, August 2004
- Invited Lecturer, An overview of the methods of ground motion selection and scaling, University of California-Irvine, November 1, 2007
- Invited Speaker, Applications of Genetic Algorithms in Earthquake Engineering, Delivered two talks at the International Institute of Earthquake Engineering and Seismology, Tehran, Iran, June 13, 2007
- Invited Speaker, Naturally-Inspired Computational Agents in Structural and Earthquake Engineering Applications, Pacific Earthquake Engineering Research Center 2006 Scholars Course, UCLA Section, November 2006
- Presenter, A Genetic Algorithm Solution for the Problem of Selection and Scaling of Ground Motion Records, the First PEER Workshop on Ground Motion Selection and Modification for Nonlinear Analysis, University of California-Berkeley, Winter 2006
- Presenter, Los Angeles Tall Buildings Structural Design Council, Second Invitational Workshop, Should Scaling Method Have This Much Impact on End Results? Sept. 22, 2006

- Los Angeles Tall Buildings Structural Design Council, Second Invitational Workshop, A Case Study of LATBSDC 2005 Criteria Application, Sept. 22, 2006
- SEAOSC 2005 Macro-Seminar (with Dr. Farzad Naeim), Selected Presentations on Seismic Design Practice from the 2005 Structural Engineers Association of California Convention, Nov. 5, Long Beach, California.
- Invited lecturer, System Identification of Building Structures for Automated Earthquake Damage Detection, the 2005 Pacific Earthquake Engineering Research Center (PEER) Earthquake Engineering Scholar Course (EESC), University of Southern California Segment on Structural Dynamics, Oct. 22, 2005.
- Invited speaker to discuss Performance-Based Seismic Design Methods at West Tennessee Structural Engineers Association, Memphis, TN, May 2004
- Invited speaker on the World Housing Encyclopedia project, Architecture Department, The University of Memphis, Nov. 2004

## Achievements, Honors and Awards:

- Recipient of the 2006 Outstanding Journal Paper, for Evolutionary Modal Identification Utilizing Coupled Shear-Flexural Response –Implication for Multistory Buildings, Part I and Part II, authored by Arzhang Alimoradi, Farzad Naeim, Eduardo Miranda, and Shahram Taghavi, awarded by the Los Angeles Tall Buildings Structural Design Council, May 2007
- Manuscript Reviewer, six technical journals with international circulation.
- Student Leadership Council Representative of the Mid-America Earthquake Center Led a team of undergraduate/graduate students at the University of Memphis, 2002-2004.
- President of the Earthquake Engineering Research Institute Student Chapter, Led a team of undergraduate/graduate students at the University of Memphis, 2002-present,
- Received funding from the Mid-America Earthquake Center to attend the Practitioner-Student Interaction Program at John A. Martin & Associates, Inc., in Los Angeles, California.
- Received the Consequence-Based Engineering (CBE) Institute Scholarship through Mid-America Earthquake Center (University of Illinois at Urbana-Champaign) to attend the CBE Institute workshop at Texas A&M University for the Certificate in Earthquake Science and Engineering.
- Received Earthquake Engineering Research Institute (EERI)/National Science Foundation (NSF) travel grant to attend and present a paper (oral presentation) and two posters at the 7th U.S. National Conference on Earthquake Engineering in Boston, Mass, August 2002.
- Received Earthquake Engineering Research Institute (EERI)/Federal Emergency Management Agency (FEMA) travel grant to attend and present a poster at the EERI 2002 annual meeting in Long Beach, California.

- Graduate Research Assistantship, Mid-America Earthquake Center (UIUC) and Herff College of Engineering Fellowship (The University of Memphis), 2001-2004.
- Research and Teaching Assistantship, and Scholarship, Department of Civil and Environmental Engineering, Carleton University, Ottawa, Canada, 2000-2001.
- Best Paper Award, Second Conference of Civil Engineering Students, Presented three papers in three successive international conferences of civil engineering students; the second paper received the first prize at Tehran University, 1993.
- Encyclopedia of Housing Construction Types in Seismically Prone Areas of the World, Member of the American, Canadian, and Iranian teams, International Association of Earthquake Engineering and Earthquake Engineering Research Institute.
- Strathmore's Who's Who 2002-2003 Edition.

## Collaborations:

- Earthquake Engineering Research Institute (EERI)
- Pacific Earthquake Engineering Research (PEER) center, University of California-Berkeley
- Mid-America Earthquake Center (MAE), University of Illinois at Urbana-Champaign
- California Institute of Technology, Earthquake Engineering Research Laboratory (EERL), Professor Wilfred Iwan
- The John A. Blume Earthquake Engineering Research Center, Stanford University, Professor Eduardo Miranda
- Applied Technology Council (ATC), Mr. Craig Comartin
- University of California, Los Angeles
- California Strong Motion Instrumentation Program
- Center for Earthquake Research and Information (CERI), Memphis, Tennessee
- Los Angeles Tall Building Structural Design Council, Technical Young Practitioner Representative of John A. Martin and Associates, Inc. in 2006
- Marquette University, Milwaukee, Wisconsin, Professor Christopher M. Foley
- Clarkson University, Dean Goodarz Ahmadi, Clarkson Distinguished Professor and Robert R. Hill '48 Professor of Mechanical and Aeronautical Engineering
- URS Corporation, Dr. Michael Mehrain
- International Institute of Earthquake Engineering and Seismology (IIEES), Tehran
- Ottawa-Carleton Earthquake Engineering Research Center, Ottawa, Ontario

## In the News:

- MAE Newsletter
- EERI Newsletter (multiple issues)
- Herff College of Engineering News
- Concrete Issues, University of Memphis Civil Engineering, Fall 2007

**Extra-Curricular Activities:**

- Member of the Consortium Development Task Groups of the George E. Brown Jr. Network for Earthquake Engineering Simulation, NEES Project, 2002-2004
- Judge: Clark Magnet High School Senior Projects, California, June 2006, and The University of Memphis' middle school science fair, Memphis, TN, Spring 2003
- Student Volunteer, 2004 EERI Annual Meeting, February 4-7, 2004, Los Angeles, California
- Co-chairman of sessions of the 1st, 2nd and 3rd International Conference of Civil Engineering Students
- Collaboration with *Omran*, the civil engineering magazine of Sharif University of Technology, 1991-1996
- Organizer of the 2nd and 3rd series of Azad University Civil Engineering Department Technical Lectures

**Workshops and Additional Professional Training:**

- The OpenSees User and Developer Workshops, University of California-Berkeley, August 2006
- Alternate Procedures for Design of Tall Buildings, Los Angeles Tall Buildings Structural Design Council, University of Southern California, May 2006.
- State of the Art Technologies: Base Isolation and Energy Dissipators, SEAONC Protective Systems Committee, Workshop at the 8th U.S. National Conference on Earthquake Engineering (100th Anniversary 1906 San Francisco Earthquake Conference), San Francisco, CA; April 18-22, 2006.
- New Information on the Seismic Performance of Existing Concrete Buildings, An EERI Technical Seminar developed by PEER and funded by FEMA, Los Angeles; Feb. 13, 2006.
- FEMA-440 Seminar on Improvement of Nonlinear Static Seismic Analysis Procedures, ATC 55-1, Los Angeles, CA, February 22, 2005.
- Fourth National Seismic Conference and Workshop on Bridges and Highways: "Current Practices and Advances in Engineering and Technology for Seismic Safety of Highway Structures," February 9-11, 2004, Memphis, TN.
- Seismic Resistance Design and Retrofit of Buildings, Ottawa-Carleton Earthquake Engineering Research Center, (OCEERC), University of Ottawa, May 17-19, 2000, Canada.
- Seismic Design of Steel/Reinforced Concrete Buildings, Instructed by Dr. Farzad Naeim, John A. Martin and Associates, Inc., International Institute of Earthquake Engineering and Seismology, April 1994.
- Finite Element Method Using ANSYS, Instructed by Professor Nader Zamani, Windsor University, International Institute of Earthquake Engineering and Seismology, Nov. 1996.

- ETABS 6+, Instructed by Dr. Manoochehr Alavi, Computers and Structures (CSi), International Institute of Earthquake Engineering and Seismology, Dec. 1997.
- Random Vibrations and Application in Earthquake Engineering, Instructed by Professor Goodarz Ahmadi, Clarkson University, Sharif University of Technology, April 1998.
- Base Isolation, Theory and Practice, Instructed by Professor James Kelly, University of California-Berkeley and Dr. Farzad Naeim, John A. Martin and Associates. Inc., International Institute of Earthquake Engineering and Seismology, April 1999.
- Seismic Design of Reinforced Concrete Structures, Instructed by Dr. S. K. Ghosh, International Conference of Building Officials (ICBO), International Institute of Earthquake Engineering and Seismology (IIEES) April 1999.
- A Workshop on Recent Earthquakes in Iran and Japan, Tehran, Iran, 1998.

**Computer Skills:**

SAP 2000 Advanced 11.0.0, Etabs Nonlinear 9.0.5, Perform 3D 4.0, Ram Structural System, OpenSees, Drain 2DX (Nonlinear Dynamic Analysis for Structures), FEAP Nonlinear Finite Element Analysis, MASTAN, MATLAB, MATLAB Toolboxes (ANN, Signal Processing, Fuzzy Logic, Optimization, Genetic Algorithms, Wavelet), MATCAD, FORTRAN PowerStation, DIGITAL Fortran, Microsoft Visual Basic 6.0, MS Office, Turbo Pascal, PITSA for Seismological Analyses

**Fields of Interests:**

- Dynamics of Structures, Earthquake Engineering, Random Vibrations, Response of Structures to Near-Fault Strong Ground Motion, Performance-Based Seismic Design and Consequence-Based Engineering, Energy-Based Design, Collapse Simulation, System Behavior and Response through Nonlinear Second-Order Inelastic Dynamic Analysis, Multi-Support Multi-Component Response.
- Structural Health Monitoring Systems, Linear and Nonlinear System Identification; Base Isolation, Active Control, Passive Energy Dissipation, Hybrid and Semi-Active Control Systems.
- Mathematical and Naturally-Inspired Optimization.
- Engineering Seismology, Strong Ground Motion Characterization and Classification, Hazard Analysis, Intraplate Earthquakes, Attenuation of Seismic Waves in Central United States.
- Engineering Mechanics; Mechanics of Materials, Nonlinear and Computational Mechanics, Hysteresis, Inelastic Nonlinear Response Calibration, Limit and Plastic Analysis.
- Seismic Behavior of Steel Structures and Tall Buildings, Behavior of Structures during Recent Earthquakes, Cyclic Behavior and Design of Wall-Frame and Coupled Wall Reinforced Concrete structural systems, Composite Structures, Capacity-based Seismic Design.

- Computational Intelligence, Neural Networks, Genetic Algorithms and Fuzzy Logic; Parallel Computation, Pattern Recognition, Particle Swarm Optimization, Complex Systems, Chaos Theory, Bifurcation and Nonlinear Dynamics.
- Experimental and Laboratory Methods in Dynamic Response Analysis of Structures.

Exhibit "G"

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797, Notice of Action**

## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER | CASE TYPE I140 |
|---|---|
| WAC-05-097-53583 | IMMIGRANT PETITION FOR ALIEN WORKER |

| RECEIPT DATE | PRIORITY DATE | PETITIONER |
|---|---|---|
| February 22, 2005 | February 22, 2005 | JOHN A MARTIN & ASSO INC |

| NOTICE DATE | PAGE | BENEFICIARY |
|---|---|---|
| August 18, 2005 | 1 of 1 | ALIMORADI, ARZHANG |

JOHN A MARTIN & ASSO INC
C/O DR FARZAD NAEIM
1212 S FLOWER ST 4 FL
LOS ANGELES CA 90015

**Notice Type:** Approval Notice
Section: Outstanding Professor or
       Researcher, Sec.203(b)(1)(B)

The above petition has been approved. The approved petition will be stored in this office. If the person for whom you are petitioning is or becomes eligible to apply for adjustment of status, he or she should contact the local INS office to obtain Form I-485, Application for Permanent Residence. A copy of this notice should be submitted with the application, with appropriate fee, to this Service Center. Additional information about eligibility for adjustment of status may be obtained from the local INS office serving the area where he or she lives, or by calling 1-800-375-5283.

If the person for whom you are petitioning decides to apply for a visa outside the United States based upon this petition, the petitioner should file Form I-824, Application for Action on an Approved Application or Petition, with this office to request that we send the petition to the Department of State National Visa Center (NVC).

The NVC processes all approved immigrant visa petitions that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to that consulate.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

---

Please see the additional information on the back. You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL CA 92607-0111
**Customer Service Telephone: (800) 375-5283**



- **Please save this notice for your records. Please enclose a copy if you have to write us or a U. S. Consulate about this case, or if you file another application based on this decision.**

- **You will be notified separately about any other applications or petitions you have filed.**

## Additional Information

### GENERAL.

The filing of an application or petition does not in itself allow a person to enter the United States and does not confer any other right or benefit.

### INQUIRIES.

You should contact the office listed on the reverse side of this notice if you have questions about the notice, or questions about the status of your application or petition. *We recommend you call*. However, if you write us, please enclose a copy of this notice with your letter.

### APPROVAL OF NONIMMIGRANT PETITION.

Approval of a nonimmigrant petition means that the person for whom it was filed has been found eligible for the requested classification. If this notice indicated we are notifying a U.S. Consulate about the approval for the purpose of visa issuance, and you or the person you filed for have questions about visa issuance, please contact the appropriate U.S. Consulate directly.

### APPROVAL OF AN IMMIGRANT PETITION.

Approval of an immigrant petition does not convey any right or status. The approved petition simply establishes a basis upon which the person you filed for can apply for an immigrant or fiance(e) visa or for adjustment of status.

A person is not guaranteed issuance of a visa or a grant of adjustment simply because this petition is approved. Those processes look at additional criteria.

If this notice indicates we have approved the immigrant petition you filed, and have forwarded it to the Department of State Immigrant Visa Processing Center, that office will contact the person you filed the petition for directly with information about visa issuance.

In addition to the information on the reverse of this notice, the instructions for the petition you filed provide additional information about processing after approval of the petition.

For more information about whether a person who is already in the U.S. can apply for adjustment of status, please see Form I-485, *Application to Register Permanent Residence or Adjust Status*.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV08- 2529 DDP (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Arzhang Alimoradi <br><br> PLAINTIFF(S) <br><br> v. <br><br> U.S. Citizenship & Immigration Services, a Bureau of the Department of Homeland Security, and DOES 1 Through 10. <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV08-02529 DDP (JCx)** <br><br> **SUMMONS** |

TO: DEFENDANT(S): <u>U.S. Citizenship & Immigration Services,</u> a Bureau of the Department of Homelan d Security,and DOES 1 Through 10.

A lawsuit has been filed against you.

     Within __60__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Ruben N. Sarkisian</u>_____, whose address is <u>Avazian and Avazian 800 Wilshire Blvd, Suite 1500 Los Angeles, CA. 90017</u>_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __APR 1 7 2008__

By: _Natalie Hongvie_

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) <br> Arzhang Alimoradi | **DEFENDANTS** <br> U.S. Citizenship & Immigration Services, a Bureau of the Department of Homeland Security, and DOES 1 Through 10. |
| **(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| **(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Ruben N. Sarkisian, Bar No. 109898, Avazian and Avazian <br> 800 Wilshire Blvd. Suite 1500, Los Angeles, CA. 90017 <br> Telephone: (818) 240-5845 <br> Facsimile: (888) 478-2340 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Admin Procedures Act 5 USC 551 et seq.,Immigration & Nationality Act §336(b), as codified at 8 U.S.C. §1447(b)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed?  ☑ No  ☐ Yes

If yes, list case number(s):

| **FOR OFFICE USE ONLY:** | Case Number: | **CV08-02529** |
|---|---|---|

| CV-71 (07/05) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☑ Check here if the U.S. government, its agencies or employees is a named plaintiff.
   Los Angeles

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☑ Check here if the U.S. government, its agencies or employees is a named defendant.
   Los Angeles

**List the California County**, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.
   Los Angeles

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____ Date _____ April 17, 2008

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |